IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

United States of America

    v.                             Case No. 2:95-cr-20

Edward B. Jones

OPINION AND ORDER

Defendant was convicted by a jury on three counts of armed bank robbery in violation of 18 U.S.C. §2113(a) and (d) (Counts 1, 3 and 5), and three counts of using and carrying a firearm during a crime of violence in violation of 18 U.S.C. §924(c) (Counts 2, 4 and 6).  On February 2, 1996, defendant was sentenced to concurrent terms of incarceration of 120 months on the bank robbery counts, to a consecutive term of incarceration of 5 years on Count 2, and to consecutive terms of incarceration of 20 years on Counts 4 and 6.  He has been in custody since his arrest on January 19, 1995, approximately 26 years.  His projected release date from the institution is February 20, 2042. See www.bop.gov/inmateloc/ (last visited March 3, 2021).

On April 13, 2020, defendant filed a pro se motion for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act of 2018, noting the change in penalties applicable to §924(c) charges implemented under the First Step Act, his glaucoma, and his alleged rehabilitation. Doc. 155. The government filed a response in opposition to the motion, arguing that defendant failed to demonstrate that he had exhausted his administrative remedies as required under §3582(c)(1)(A). Doc. 158.  On April 21, 2020, this court denied defendant's motion without prejudice due to his failure to exhaust administrative remedies.  Doc. 159.

Thereafter, defendant filed multiple motions for reconsideration and other filings, unsuccessfully seeking to re-litigate the non-exhaustion issue.  Essentially, the documents submitted by defendant demonstrated that defendant's requests for release and his appeal efforts were consistently rejected by the institution due to the defendant's failure to comply with basic administrative requirements, such as defendant's failure to sign the request or to provide the name of the inmate who prepared the request.  Defendant's attempts at exhaustion failed despite the fact that when his requests were rejected, he was told what was wrong with them and was given the opportunity to remedy the deficiencies.  The warden never addressed defendant's requests for release on the merits.

Counsel was appointed to represent the defendant in this case. On December 14, 2020, counsel filed a reply to Doc. 175, the government's latest opposition memorandum based on non-exhaustion. Doc. 185.  Defense counsel noted that she had recently been informed by government counsel that the Department of Justice was now instructing United States attorneys to concede that administrative exhaustion has been satisfied in cases where over 30 days had passed since the request to the warden was made, regardless of whether the defendant appealed the warden's decision. Defense counsel urged this court to address defendant's request for compassionate release on the merits.  On December 18, 2020, the government filed a sur-reply indicating that the government now conceded exhaustion in this case.  Doc. 186.  However, the government argued that the request for compassionate release should be denied because defendant had not shown an extraordinary reason

for a sentence reduction, and because the statutory sentencing factors in 18 U.S.C. §3553(a) weigh against defendant's release in this case.

Given the government's concession on the exhaustion issue, the court will address defendant's request for a sentence reduction on the merits and will consider all of the materials previously submitted in support of that request.  Therefore, defendant's pending motions for reconsideration of the court's previous rulings on the exhaustion issue (see Docs. 177 and 183) are moot.


I. Standards for Compassionate Release

Under §3582(c)(1)(A)(i), the court can reduce a sentence under §3582(c)(1)(A)  if  the  court  finds  that  "extraordinary  and compelling reasons warrant such a reduction[.]"  §3582(c)(1)(A)(i). District courts have full discretion to define what constitutes an "extraordinary and compelling" reason. See United States v. Jones, 980 F.3d 1109, 1111 (6th Cir. Nov. 20, 2020).  The court must also consider the factors set forth in §3553(a) to the extent that they are applicable.  §3582(c)(1)(A).  If, after weighing the §3553(a) factors, the court decides that the motion is well taken, the court "may reduce the term of imprisonment[.]"  §3582(c)(1)(A).  The grant of compassionate release is at the discretion of the court. United States v. Kincaid, 802 F. App'x 187, 188 (6th Cir. 2020).


II. Defendant's Reasons for Compassionate Release
A. Medical Conditions

Defendant, who is 66 years old, alleges that he has serious medical  conditions  which  warrant  a  reduction  in  sentence,

3

specifically, arthritis in the knees and glaucoma.  He has submitted no medical records which refer to arthritis, nor is there any evidence that defendant is disabled due to this condition.  He has submitted a handful of medical records regarding his glaucoma. Although these records verify the glaucoma diagnosis, they include technical information which is not explained.  There are records with a doctor's handwritten treatment notes from examinations on July 18, 2012, September 21, 2012, and March 14, 2013, which are largely unintelligible. Doc. 155, pp. 26-28.  The records indicate that eye drops were prescribed in 2013 and 2014.  Doc. 171, p. 41. There are no records describing in practical terms the current status of defendant's glaucoma condition or his prognosis.

A reentry plan dated January 17, 2019, indicated that defendant is at a CARE1 level of medical care (healthy or simple chronic care).  Doc. 155, p. 29.  This document stated that defendant had no medical restrictions, that he was capable of regular duty, and that he was cleared for food service.  Doc. 155, p. 29.  This plan also noted that defendant was working on the Compound PM1 work detail.  Doc. 155, p. 30.  The defendant has not established that his medical conditions provide an extraordinary and compelling reason for a sentence reduction.

B. Rehabilitation

Defendant also claims that he is rehabilitated.  The rehabilitation of a defendant is not, by itself, an extraordinary and compelling reason for compassionate release.  See 28 U.S.C. §994(t)("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").  However, rehabilitation may be considered along with other circumstances in

deciding whether extraordinary and compelling reasons for early release exist.

Defendant asserts in his filings that he has embraced Christianity.  He completed 6 educational programs from 2002 to 2009, but has completed no programs since then.  Doc. 155, p. 30. The reentry plan stated that defendant had no disciplinary actions in the past 6 months, Doc. 155, p. 29, but his complete disciplinary record while in the institution is unknown.  The plan also reported that defendant was employed at the institution and earns satisfactory work evaluations.  Doc. 155, p. 30.  On the whole, while defendant's efforts at rehabilitation are commendable in some respects, there is nothing extraordinary about this record.

## C. Change in §924(c) Penalties

Defendant also argues that the non-retroactive change in the penalties for multiple offenses under 18 U.S.C. §924(c) implemented in §403(a) of the First Step Act may constitute an extraordinary and compelling reason for a sentence reduction.  The court previously denied defendant's motion for a reduction of sentence based on that change, noting that in §403(b) of the First Step Act, Congress specified that the change in penalties only applied to defendants sentenced after the effective date of the Act.  See Docs. 153 and 154.  The government argues that considering this change in §924(c) penalties as an extraordinary reason for a sentence reduction would constitute an end run around Congress's decision not to make this change retroactive.

Courts have reached different conclusions as to whether the change in §924(c) penalties can constitute an extraordinary and compelling reason for a sentence reduction under §3582(c)(1)(A)(i).

Even assuming that it can, the change in penalties presents no extraordinary or compelling reason for a reduction in defendant's case.  Any defendant sentenced for multiple §924(c) counts before the enactment of the First Step Act is facing similar penalties. See United States v. Robinson, No. 20-5929, 2021 WL 71545, at *2 (6th Cir. Jan. 6, 2021)(holding that district court did not abuse its discretion in denying release based on consecutive §924(c) counts on the ground that such long sentences were "commonplace" and not the kind of extraordinary and compelling reasons that warranted a reduction).

D. Conclusion

The court concludes that the medical conditions of the defendant, his rehabilitation efforts, and his consecutive §924(c) sentences, considered individually or together, do not constitute an extraordinary and compelling reason for his release.

III. §3553(a) Factors

The court must also address the applicable §3553(a) factors. The offenses in this case were extremely serious.  Defendant was convicted of three counts of armed bank robbery and three counts of carrying and using a firearm during an offense of violence.

According to the presentence investigation report ("PSR"), the defendant committed the first bank robbery on November 22, 1994, at a bank on East Broad Street in  Columbus, Ohio.  Defendant brandished a handgun, held the gun to the head of a teller, and ordered her to open the vault.  The teller opened her drawer, and defendant took $6,084 from the drawer and exited the bank.

The second robbery occurred on November 29, 1994, in

6

Springfield, Ohio. Defendant waived a firearm at the tellers, ordered them into the vault, and instructed a teller to put packets of bills, a total of $33,000, in a leather bag. Defendant directed the tellers to the restroom. He then pulled a hand grenade from the bag, handed the grenade to a teller, removed the safety pin from the grenade, and told the teller not to let go. Defendant closed the restroom door and left the bank. The police arrived, and the grenade was successfully detonated by the bomb squad. It was determined that the grenade was a practice grenade which had been filled with gunpowder.

The third robbery occurred on January 6, 1995, at a bank in Worthington, Ohio. Defendant pointed a handgun at the two tellers and obtained cash from the teller drawers. When informed that the vault was on a timer and could not be opened, he instructed a teller to access another teller drawer. Defendant obtained $16,500.95 during this robbery. Defendant put the money in a bag. As defendant rummaged through the bag, some of the money fell out, and defendant held the gun to a teller's head and ordered her to place the money in the bag. He then ordered the two female tellers to the restroom and told them to take off their clothes. They removed their blouses. Defendant fondled one of the tellers between her legs, and when the teller knocked his hand away, defendant pointed the gun at her head. Defendant then told the tellers that he was going to place a grenade on the door, and that it would explode if they opened the door. Defendant left the bank. The tellers were then found by another teller in the bank who had gone unnoticed by the defendant. No grenade was found in the bank.

The total loss to the banks was $55,584.95. Two of the tellers quit their jobs, and all of them were mentally traumatized

7

by the robberies.  Considering the violent nature of these robberies and the psychological torture inflicted on the victims, the sentence must be sufficient to deter similar conduct in the future and to protect the public from additional crimes by the defendant.

As to the history and characteristics of the defendant, at the time of his convictions for the offense in this case, defendant was in Criminal History Category IV.  His prior juvenile record included a purse snatching offense at age 15 and an arrest for auto trespassing at age 17.  Defendant was convicted in 1973 at age 18 for aggravated assault.  The PSR stated that defendant fondled the breasts of a 14-year-old girl and carried her to an abandoned garage, where he engaged in oral copulation and sodomy and attempted to have vaginal intercourse with her.  When questioned by the police, defendant claimed that he only slapped her in the face.  In 1977, at age 22, defendant was convicted of engaging in forced vaginal intercourse with a 9-year-old girl.  Defendant admitted that he attempted to have sex with her but claimed that he did not vaginally penetrate her.  These prior convictions for violent offenses reinforce the need for defendant to serve a sentence which protects the public.

Defendant served 17 years in state prison for this offense, and was released on parole on May 31, 1994.  On September 27, 1994, defendant was convicted of unauthorized use of property after taking items from a Meijer store.  Less than six months after his release on parole, defendant committed the first of the bank robberies charged in the instant case. At that time, defendant was 39 years old and arguably should have been more mature.  The lengthy state prison term he served obviously was not sufficient to

8

deter him from engaging in additional criminal conduct.

The PSR indicated that defendant had a traumatic childhood, and was physically and sexually abused at the ages of 12 and 13 by his step-father. The relationship between his mother and step-father involved domestic violence. Defendant has a history of substance abuse, including the use of alcohol, marijuana and PCP. He was expelled from high school but received an Associates of Arts degree in arts and training in masonry and building maintenance while serving his state sentence.

The PSR discusses a psychological evaluation of the defendant which was completed at the state prison. Defendant was diagnosed as having a depressive disorder with malingering and a passive-aggressive personality disorder. According to the report, defendant tended to view himself as the victim; rationalized or excused the crimes he committed; was self centered with faulty judgment and impulse control; and failed to profit from criticism or advice. Also troubling is the fact that defendant apparently has not maintained contact with any of his family members, and therefore cannot rely on any family members to provide him with a place to reside if he is released. The individualized reentry plan, Doc. 171, pp. 36-37, says nothing about residential reentry center or home confinement placement, nor does it document where defendant plans to reside if he is released. It is unclear if defendant could be adequately supervised by the probation office. These considerations cast doubt on whether the safety of the public could be protected if the defendant is released.

Defendant has served approximately 26 years, less than half of the imposed sentence of 55 years. A reduced sentence would not be sufficient to reflect the seriousness of the offenses, promote

9

respect for the law, provide just punishment, afford adequate deterrence and protect the public from more crimes by the defendant.

Recognizing the change in penalties as a reason for reducing defendant's sentence would also result in a disparity with sentences imposed on defendants who engage in similar conduct today.  When defendant committed the offenses in this case in 1994 and 1995, §924(c) only provided for a mandatory minimum consecutive penalty of 5 years for using or carrying a firearm during a crime of violence.  Under the First Step Act changes, defendant would have been sentenced to three 5-year terms on the firearm counts consecutive to the 10 years imposed for the bank robberies, a total of 25 years.  However, as the government noted, Congress amended §924(c) in 1996 to create the new offense of brandishing a firearm, which carried a mandatory minimum consecutive 7-year penalty.  See 18 U.S.C. §924(c)(1)(A)(ii).  Defendant brandished a firearm during all three bank robberies.  If he committed those same firearm offenses today, he would be subject to a total consecutive sentence of 21 years in addition to the 10-year sentence on the bank robbery counts, or a total sentence of 31 years.  Defendant has been incarcerated for 26 years.  If his sentence is reduced now, he will have served disproportionately less time than a defendant who is sentenced today for the same type of crimes.

The court concludes that the §3553(a) factors warrant denying defendant's motion for a reduced sentence.  Even assuming, arguendo, that defendant's health concerns, his rehabilitation efforts, and the change in the §924(c) penalties are sufficient, either alone or in combination, to constitute an "extraordinary and compelling reason" for a sentence reduction, that reason is

10

outweighed by the statutory factors which militate against defendant's early release.

IV. Conclusion

In accordance with the foregoing, defendant's motions for a reduced sentence are denied.


Date: March 5, 2021                    _____s/James L. Graham_____
                                       James L. Graham
                                       United States District Judge

11