IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **United States of America,** | : |
| | : |
| | :    Case No. 2:95-cr-00020 |
| **Plaintiff,** | : |
| v. | :    Judge Graham |
| | : |
| **Edward Jones,** | : |
| | : |
| **Defendant.** | : |

## OPINION & ORDER

    This matter is before the Court upon Defendant Edward Jones' motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), which allows for modification of a previously imposed sentence upon a showing of "extraordinary and compelling reasons." Doc. 200; 18 U.S.C. § 3582(c)(1)(A). The government opposes his motion. Doc. 201. For the reasons that follow, the Court **DENIES** Defendant Jones motion for compassionate release.

## DISCUSSION

    Commonly referred to as the "compassionate release" statute, 18 U.S.C. § 3582(c) provides that the Court "may reduce the term of imprisonment" upon a showing of "extraordinary and compelling reasons [that] warrant such a reduction," so long as such a reduction is "consistent with applicable policy statements issued by the sentencing commission." 18 U.S.C. § 3582(c). The Sentencing Commission has released a policy statement, U.S.S.G. § 1B1.13, pursuant to 28 U.S.C. § 994(t), the statute which directs the Sentencing Commission to describe "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). If a defendant can establish such reasons, the Court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) in determining the appropriate sentence reduction, if any. 18 U.S.C. § 3582(c).

[1]

Defendant Edward Jones was convicted by a jury on three counts of armed bank robbery in violation of 18 U.S.C. §2113(a) and (d) (Counts 1, 3 and 5), and three counts of using and carrying a firearm during a crime of violence in violation of 18 U.S.C. §924(c) (Counts 2, 4 and 6). On February 2, 1996, Jones was sentenced to concurrent terms of incarceration of 120 months on the bank robbery counts,[1] to a consecutive term of incarceration of 5 years on Count 2, and to consecutive terms of incarceration of 20 years on Counts 4 and 6. The Bureau of Prisons estimates his release date will be April 5, 2041. *See* BOP Inmate Locator, https://www.bop.gov/inmateloc/.

This is not the first time Jones has moved the Court for compassionate release or sentence reduction. *See, e.g.*, doc. 118; doc. 132; doc. 142; doc. 153; doc. 155; doc. 160; doc. 169; doc. 171; and doc. 183. Most recently, the Court denied Jones' motion for compassionate release on the grounds that he failed to establish extraordinary and compelling reasons for a sentence reduction. Doc. 189. Specifically, Jones argued that his medical conditions, his rehabilitative progress, and the change in the law regarding 18 U.S.C. §924(c) sentencing penalties constituted extraordinary and compelling reasons for a reduction. The Court found that Jones' medical records did not demonstrate conditions or impairments that rose to the level of extraordinary and compelling for the purposes of sentence reduction. Doc. 189, # 604. His rehabilitative steps, while commendable, were not "extraordinary." *Id.* at # 605. And the Court found that Jones' sentence was not an extraordinary and compelling reason for a reduction, notwithstanding the fact that he would face lesser penalties if he were sentenced for the same offenses today, because many other defendants sentenced before the change in law had similar sentences. *Id.* at # 606. Finally, the Court concluded that, even if Jones had established extraordinary and compelling reasons, the sentencing factors under 18 U.S.C. § 3553(a) militated against any reduction in his sentence. *Id.* at # 610-11.

---

[1] The sentences imposed on the bank robbery counts were later reduced to 105 months due to a retroactive change in sentencing law. *See* doc. 197.

In the instant motion, Jones argues for compassionate release based solely on his medical condition, which he describes as "total blindness." Doc. 203, # 655. Under U.S.S.G. § 1B1.13, extraordinary and compelling circumstances may be established when:

> the defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13(b)(2). Jones has submitted a record of a clinical encounter dated June 16, 2025, which states that he is 70 years old, has "[severe] end stage glaucoma," and that "glasses will not improve vision." Doc. 206-1, # 681-82. He has served well over 10 years of his term of imprisonment. However, the clinical encounter report indicates that Jones "had a battery blow up in [his] face years ago," (*id.* at # 682) suggesting that to be the possible cause of his deteriorating eyesight, as opposed to deterioration "because of the aging process." U.S.S.G. § 1B1.13(b)(2). Furthermore, the record describes his vision as "20/400" in one eye, suggesting some residual vision.[2]

The government, for its part, argues (1) Jones did not adequately support his argument with medical records,[3] (2) blindness alone is not an extraordinary and compelling reason for sentence reduction, and, (3) regardless, the sentencing factors warrant no reduction.

---

[2] Jones describes himself as living in "total blindness," (doc. 203) but that designation is only listed under "restrictions" alongside "no upper bunk" and "no duty." Doc. 203, # 655, 659. Thus, "total blindness" appears to be a set of restrictions/accommodations provided to Jones by the facility, rather than a descriptor of Jones' own vision status.

[3] When the government made this argument, Jones had submitted only one "Medical Duty Status" document which listed his "total blindness" restriction as well as some of his accommodations, including a wheelchair, walker, magnifier, and inmate companion. Doc. 203, # 659. Though Jones has since supplemented his motion with the additional submission of the clinical encounter report, the latter document does not provide any substantially new information such that would change the Court's analysis or refute the government's argument that Jones' motion is inadequately supported.

Ultimately, the Court agrees that Jones has not adequately supported his health-based argument. Substantial impediments may be inferred from blindness in a prison setting, but Jones must do more to show that his blindness rises to an extraordinary and compelling circumstance. *United States v. Anderson*, No. 3:21-CR-51-KHJ-LGI, 2023 WL 417404, at *2 (S.D. Miss. Jan. 25, 2023) ("While blindness is undoubtedly a 'serious physical condition,' it does not necessarily 'substantially diminish the ability' of [defendant] to care for himself."). To the extent that Jones' medical documentation verifies his blindness, it also demonstrates the numerous accommodations provided to him by the facility. Simply put, the fact of Jones' blindness does not establish extraordinary and compelling circumstances warranting compassionate release.

Jones has presented evidence that he has 20/400 vision in his left eye but has failed to present any evidence which would permit the Court to evaluate the significance of that impairment. Commonly available literature on the meaning of 20/__ vision classifications reveals the definition of 20/400 vision is what a person with normal 20/20 vision could see at 400 feet.[4] The Court knows from its own experience that it can see a baseball player 400 feet away at the centerfield fence. Of course, the Court's experience is not evidence. Nevertheless, the Court's concerns about the quality of the evidence presented by Jones leaves the Court unpersuaded that he is entitled to compassionate release on the grounds of his vision impairment.

Even if Jones had established extraordinary and compelling circumstances, the sentencing factors set forth in 18 U.S.C. § 3553(a) render a sentence reduction inappropriate. In that regard, much of what the Court stated last time remains equally applicable here:

> ```
> The offenses in this case were extremely serious.
> Defendant was convicted of three counts of armed bank robbery
> ```

---

[4] *See, e.g.*, *20/20 Vision*, CLEVELAND CLINIC (October 8, 2024), https://my.clevelandclinic.org/health/articles/2020-vision

[4]

and three counts of carrying and using a firearm during an offense of violence.

According to the presentence investigation report ("PSR"), the defendant committed the first bank robbery on November 22, 1994, at a bank on East Broad Street in Columbus, Ohio. Defendant brandished a handgun, held the gun to the head of a teller, and ordered her to open the vault. The teller opened her drawer, and defendant took $6,084 from the drawer and exited the bank.

The second robbery occurred on November 29, 1994, in Springfield, Ohio. Defendant waived a firearm at the tellers, ordered them into the vault, and instructed a teller to put packets of bills, a total of $33,000, in a leather bag. Defendant directed the tellers to the restroom. He then pulled a hand grenade from the bag, handed the grenade to a teller, removed the safety pin from the grenade, and told the teller not to let go. Defendant closed the restroom door and left the bank. The police arrived, and the grenade was successfully detonated by the bomb squad. It was determined that the grenade was a practice grenade which had been filled with gunpowder.

The third robbery occurred on January 6, 1995, at a bank in Worthington, Ohio. Defendant pointed a handgun at the two tellers and obtained cash from the teller drawers. When informed that the vault was on a timer and could not be opened, he instructed a teller to access another teller drawer. Defendant obtained $16,500.95 during this robbery. Defendant put the money in a bag. As defendant rummaged through the bag, some of the money fell out, and defendant held the gun to a teller's head and ordered her to place the money in the bag. He then ordered the two female tellers to the restroom and told them to take off their clothes. They removed their blouses. Defendant fondled one of the tellers between her legs, and when the teller knocked his hand away, defendant pointed the gun at her head. Defendant then told

the tellers that he was going to place a grenade on the door, and that it would explode if they opened the door. Defendant left the bank. The tellers were then found by another teller in the bank who had gone unnoticed by the defendant. No grenade was found in the bank.

The total loss to the banks was $55,584.95. Two of the tellers quit their jobs, and all of them were mentally traumatized by the robberies. Considering the violent nature of these robberies and the psychological torture inflicted on the victims, the sentence must be sufficient to deter similar conduct in the future and to protect the public from additional crimes by the defendant.

As to the history and characteristics of the defendant, at the time of his convictions for the offense in this case, defendant was in Criminal History Category IV. His prior juvenile record included a purse snatching offense at age 15 and an arrest for auto trespassing at age 17. Defendant was convicted in 1973 at age 18 for aggravated assault. The PSR stated that defendant fondled the breasts of a 14-year-old girl and carried her to an abandoned garage, where he engaged in oral copulation and sodomy and attempted to have vaginal intercourse with her. When questioned by the police, defendant claimed that he only slapped her in the face. In 1977, at age 22, defendant was convicted of engaging in forced vaginal intercourse with a 9-year-old girl. Defendant admitted that he attempted to have sex with her but claimed that he did not vaginally penetrate her. These prior convictions for violent offenses reinforce the need for defendant to serve a sentence which protects the public.

Defendant served 17 years in state prison for this offense, and was released on parole on May 31, 1994. On September 27, 1994, defendant was convicted of unauthorized use of property after taking items from a Meijer store. Less than six months after his release on parole, defendant committed the first of the bank robberies charged in the

[6]

> instant case. At that time, defendant was 39 years old and arguably should have been more mature. The lengthy state prison term he served obviously was not sufficient to deter him from engaging in additional criminal conduct.
>
> The PSR indicated that defendant had a traumatic childhood, and was physically and sexually abused at the ages of 12 and 13 by his step-father. The relationship between his mother and stepfather involved domestic violence. Defendant has a history of substance abuse, including the use of alcohol, marijuana and PCP. He was expelled from high school but received an Associates of Arts degree in arts and training in masonry and building maintenance while serving his state sentence.
>
> The PSR discusses a psychological evaluation of the defendant which was completed at the state prison. Defendant was diagnosed as having a depressive disorder with malingering and a passive-aggressive personality disorder. According to the report, defendant tended to view himself as the victim; rationalized or excused the crimes he committed; was self centered with faulty judgment and impulse control; and failed to profit from criticism or advice.

Doc. 189, # 606-09. Even assuming that Jones' eyesight has deteriorated substantially since he last moved for compassionate release,[5] the Court has not been given any reason to depart from its finding that Jones continues to pose a danger to the public. And other purposes of sentencing—e.g., the need to reflect the seriousness of the offense and to afford adequate deterrence to criminal conduct—persist with equal force, regardless of any deterioration of Jones' eyesight. In sum, Jones has provided no reason for the Court to depart from its previous conclusion, and his sentence remains appropriate in consideration of the 18 U.S.C. § 3553(a) factors.

---

[5] As here, Jones provided similarly thin documentation in support of his previous motion, and the inadequacy of his supporting material prevents useful comparison.

## CONCLUSION

The Court finds that Defendant Edward Jones has not established extraordinary and compelling reasons for sentence reduction. Furthermore, the Court finds that Defendant Jones' current sentence is appropriate pursuant to the 18 U.S.C. § 3553(a) factors. Therefore, Defendant Jones' motion for compassionate release (doc. 200) is hereby **DENIED**. Defendant Edward Jones' motion for the appointment of counsel (doc. 206) is hereby **DENIED without prejudice**.

**IT IS SO ORDERED**.

s/ James L. Graham  
JAMES L. GRAHAM  
United States District Judge

DATE: September 8, 2025